IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| JOSHUA T. WOOLRIDGE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 3:21-cv-05057-MDH |
|  | ) |  |
| SELECT GENETICS, LLC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ORDER

Before the Court is Defendant Select Genetics, LLC's, ("Select Genetics") Motion to Stay the Litigation and Compel Arbitration. (Doc. 4). For the reasons set forth herein, the Motion is **GRANTED**.

## BACKGROUND

Select Genetics is a poult supplier—breeding and hatching turkey poults. It hired Plaintiff Joshua Woolridge as an at-will employee in August 2019 to work on the crew that vaccinated turkeys at Select Genetics' location in Aurora, Missouri. Select Genetics terminated Plaintiff's employment less than a year later on March 31, 2020, for allegedly violently threatening a co-worker. Plaintiff has asserted claims of race discrimination and retaliation.

Defendant contends that the dispute at issue in this case is subject to mandatory arbitration as provided for in its employment policy. On August 6, 2019, Plaintiff signed an Employee Acknowledgment as to an Employee Solution Process policy of Defendant. On December 26, 2019, Plaintiff signed an Employee Acknowledgement related to training on the same policy. Both documents state, "this policy does not alter the employment at-will relationship in any way."

Defendant contends that as part of Plaintiff's employment with Select Genetics, Plaintiff agreed to participate in its Employee Solution Process, including mandatory arbitration. Defendant argues that Plaintiff's signing of the Employee Acknowledgments constituted his consent to mandatory arbitration. Both documents state that Plaintiff "will be deemed to have accepted this policy [of mandatory arbitration] as the exclusive method to resolve complaints or disputes."

## STANDARD

A party who has not agreed to arbitrate a dispute cannot be forced to do so. *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648 (1986). The validity of an arbitration agreement is determined by reference to state law. *See Perry v. Thomas,* 482 U.S. 483, 493-94 n. 9 (1987). Because Plaintiff worked for Defendant in Missouri and resided in Missouri, Missouri law controls the validity of Defendant's arbitration agreement. Under Missouri law, the Court must engage in a three-step process, deciding: 1) whether a valid contract exists; 2) whether the specific dispute falls within the scope of the arbitration agreement; and 3) the court must then determine if the agreement is subject to revocation based upon contract principles, such as whether it is procedurally or substantively unconscionable. *Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730, 736 (Mo. App. W.D. 2011), citing *Nitro Distributing, Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006). The court uses normal state law contract principles in deciding those issues. *Id.*

## DISCUSSION

Defendant argues that the Federal Arbitration Act and Missouri law require the parties to arbitrate Plaintiff's claims. Plaintiff asserts that there exists no legal consideration to enforce the arbitration policy. Specifically, Plaintiff argues that there exists no consideration because Plaintiff was an at-will employee.

As a preliminary matter, the Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA places arbitration agreements "upon the same footing as other contracts." *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (citation omitted). Not only does the FAA require the enforcement of arbitration agreements, but it "declare[s] a national policy favoring arbitration." *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20 (2012) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). In deciding a motion to compel arbitration, courts first consider whether there is a valid agreement to arbitrate between the parties. *See, e.g.*, *Sniezek v. Kan. City Chiefs Football Club*, 402 S.W.3d 580, 583 (Mo. App. 2013). Plaintiff argues that the agreement to arbitrate here is not valid because Plaintiff did not assent to it and furthermore that the agreement lacks consideration.

1. **Plaintiff assented to the arbitration agreement**

Plaintiff argues that the arbitration agreement lacks mutuality because he did not assent to the Employee Solution Process. While Plaintiff's affidavit states that "Plaintiff did not receive, read, or review the Employee Solutions Process," Plaintiff confusingly also admits that he did sign the Employee Acknowledgment forms—including the Employee Solutions Process—twice: once August 6, 2019, and again on December 16, 2019. The Acknowledgement form specifically states that the signing employee has "received" and "understand[s]" that it is the employee's responsibility to read the contents of the Employee Solutions Process policy. It further states that the employee "understand[s] that all employees who are hired…or employees who continue employment…will be deemed to have accepted this policy as the exclusive method to resolve

3

complaints or disputes." Plaintiff's argument that there was no assent to the arbitration agreement lacks merit.

### 2. The arbitration agreement is supported by consideration

In Missouri, legal consideration is essential for the formation of any contract, including one for arbitration. *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476 (Mo. App. E.D. 2010). Consideration is created by "either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow v. Hallmark Cards*, *Inc.*, 273 S.W.3d 15, 25 (Mo. App. W.D. 2008). The general rule in Missouri is that an employer's promise of at-will employment does not constitute consideration for an arbitration agreement purportedly executed by employer and employee, regardless of whether employment promised was future or new rather than continued, because terms and conditions of at-will employment are unilaterally imposed on at-will employees. *Jiminez v. Cintas Corp.*, 475 S.W.3d 679 (Mo. App. E.D. 2015); *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. banc 2014). *See also Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 434-35 (Mo. App. W.D. 2010) (finding no consideration where the agreement "does not alter the fundamental component of the at-will employment relationship—the ability to quit or be fired at any time for any reason."); *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 507 (Mo. App. W.D. 2013) (holding of continued at-will employment did not constitute consideration for the arbitration agreement.).

Nevertheless, the parties' mutual promise to arbitrate constitutes sufficient consideration if that promise was binding upon both sides. *See Colton v. Hibbett Sporting Goods, Inc.,* No. 2:16-CV-04002-NKL, 2016 WL 3248578, at *3 (W.D. Mo. June 13, 2016) (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. banc 2014)). These promises, however, must be binding, not illusory.

*Baker,* 450 S.W.3d at 776. A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations. *Id.* (citing *Morrow,* 273 S.W.3d at 25).

In assessing this question, the *Baker* court drew a distinction between prospective and retroactive modification. When an employer has unilateral power to modify a contract but is limited to prospective modifications made with reasonable notice, this power does not render illusory any mutual promises to arbitrate. *Colton,* No. 2:16-CV-04002-NKL, 2016 WL 3248578, at *3 (citing *Baker*, 450 S.W.3d at 777). Where the employer is not limited to prospective changes, however, it can conceivably "disclaim or modify its arbitration promises unilaterally at any time for its own benefit," thus allowing the employer to decide, "in the course of an ongoing arbitration process…that, effective in 30 days, it no longer would consider itself bound by the results of the arbitration." *Baker*, 450 S.W.3d at 777. Because the modification provision in *Baker* was not limited to prospective claims, the Missouri Supreme Court ultimately held that the employer "retain[ed] unilateral authority to amend the agreement retroactively," and so "its promise to arbitrate is illusory and is not consideration." *Id.*

Here, Defendant does not have the ability to modify the arbitration portion of the Employee Solutions Process either retrospectively or prospectively. While the agreement does allow for Defendant to refuse to proceed with any "non-legal" complaint or to modify the process *other than* mediation and arbitration, no part of the Employee Solutions Process indicates that Defendant may avoid or modify the arbitration process if a complaint involving legally protected rights is brought. Because Defendant's right to modify the Employee Solutions Process is limited to conflict resolution steps separate from the arbitration process and does not provide for retroactive modification of the arbitration agreement, its promise to arbitrate is not illusory. *Cf. Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206 (5th Cir. 2012) (the Fifth Circuit finding arbitration

5

provision illusory under Texas law, where employer had the "right to revise, delete, and add" to the entire employee handbook in which the arbitration provision was located); *Bowers v. Asbury St. Louis Lex, LLC*, 478 S.W.3d 423, (Mo. App. E.D. 2015 (finding employer's promise to arbitrate illusory where it had the ability to "change [the Arbitration] Rules from time to time"); *Frye v. Speedway Chevrolet Cadillac et al,* 321 S.W.3d 429, 444 (Mo. App. W.D. 2010 (finding employer's unilateral right to modify terms of entire dispute resolution program made mutual promise to arbitrate illusory); *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. App. W.D. 2008) (finding Dispute Resolution Process non-mutual where "Hallmark in its sole discretion [could] modify or discontinue the DRP at any time" thereby waiving it's requirement to pay arbitration fees). Therefore, the arbitration agreement at issue in this case is supported by consideration and is valid.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay the Litigation and Compel Arbitration (Doc. 4) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 17, 2021      /s/ Douglas Harpool
                            **DOUGLAS HARPOOL**
                            **United States District Judge**